UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| THE MOSAIC COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 23-00247 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) ) | |

# COMPLAINT

Plaintiff The Mosaic Company ("Mosaic"), by and through its attorneys, alleges and states as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest certain aspects of the final results of the U.S. Department of Commerce's ("Commerce") administrative review of the countervailing duty order of phosphate fertilizers from the Russian Federation ("Russia") for the period November 30, 2020 to December 31, 2021. The final results were published in the Federal Register on November 6, 2023. *Phosphate Fertilizers From the Russian Federation: Final Results of Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 76,182 (Dep't Commerce Nov. 6, 2023) ("*Final Results*"), and accompanying Issues and Decision Memorandum ("IDM").

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under sections 516A(a)(2)(A)(i)(I) and (a)(2)(B)(iii) of the Tariff Act of 1930, as amended. 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (a)(2)(B)(iii).

## STANDING

3.  Plaintiff is a U.S. producer of the domestic like product and therefore an interested party within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(C). Mosaic was the Petitioner in Commerce's countervailing duty investigation on phosphate fertilizers from Russia, and Mosaic participated actively in the Commerce administrative review that led to the *Final Results*, including by filing case and rebuttal briefs. Accordingly, Mosaic has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4.  Plaintiff commenced this action by filing a summons on November 28, 2023, within 30 days after publication of the *Final Results* in the Federal Register. Plaintiff is filing this Complaint within 30 days after filing the summons. Accordingly, this action is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.  On April 7, 2021, Commerce published a countervailing duty order on phosphate fertilizers from Russia. *Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Dep't Commerce Apr. 7, 2021) (the "Order").

6.  On May 2, 2022, Plaintiff submitted a timely request that Commerce conduct an administrative review with respect to Industrial Group Phosphorite LLC ("Industrial Group Phosphorite") and Joint Stock Company Apatit ("JSC Apatit"). Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers From Russia: Request for Countervailing Duty Administrative Review" (May 2, 2022). On June 9, 2022, Commerce initiated a countervailing duty administrative review of the Order for JSC Apatit and

Industrial Group Phosphorite for the period of review ("POR"), November 30, 2020 through December 31, 2021.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 35,165, 35,174 (Dep't Commerce June 9, 2022).  Commerce selected JSC Apatit as the mandatory respondent and rescinded the review with respect to Industrial Group Phosphorite. *See Phosphate Fertilizers From the Russian Federation: Preliminary Results and Partial Rescission of the Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 28,505 (Dep't Commerce May 4, 2023) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("PDM") at 1.  Between August 28, 2022 and April 10, 2023, Commerce received responses to questionnaires, comments on the questionnaire responses, and issued supplemental questionnaires.  *See id*. at 2.

7. Commerce issued the *Preliminary Results* on April 27, 2023.  *See Preliminary Results*, 88 Fed. Reg. at 28,506.  Commerce preliminarily determined that six subsidy programs were countervailable during the period of review, including the Provision of Natural Gas for Less Than Adequate Remuneration ("LTAR").  PDM at 13-25.  Commerce had previously found the Provision of Natural Gas for LTAR program to be countervailable in the investigation, and Commerce found that the Government of Russia ("GOR") did not submit any new information in this review to warrant reconsideration of its prior determination that the program is countervailable.  *Id.* at 13.  Accordingly, Commerce preliminarily determined that the program confers a financial contribution and is specific.  *Id*. at 13-14.

8. To assess the adequacy of remuneration that JSC Apatit paid for natural gas provided by the GOR, and calculate the amount of benefit that the GOR conferred to JSC Apatit under this program, Commerce applied the hierarchy for selecting a benchmark under 19 C.F.R. § 351.511(a)(2).  *Id.* at 14.  Consistent with its findings in the investigation, Commerce

3

preliminarily determined that there were no viable tier one benchmarks because the Russian market for natural gas was distorted through the GOR's predominant role in the market during the POR. *Id.* at 16. Commerce then examined whether there was a viable tier two benchmark, pursuant to 19 C.F.R. § 351.511(a)(2)(ii), namely a "world market price where it is reasonable to conclude that such price would be available to purchasers in the country in question." *Id*.

9. Commerce stated that the record contained the following world market natural gas pricing data: Organization for Economic Cooperation and Development ("OECD") natural gas prices for Europe, and corresponding taxes, sourced from the International Energy Agency ("IEA"), which Mosaic had submitted; and Kazakh natural gas export prices under customs classification code 2711.21.000 sourced from the Bureau of Natural Statistics ("BNS") of the Agency for Strategic Planning and Reforms of the Republic of Kazahkstan, which JSC Apatit had submitted. *Id*.

10. Commerce focused its analysis of these two sets of pricing data as potential tier two benchmarks on the existence of natural gas pipelines through which gas could be exported to Russia. Commerce stated that it had found in other proceedings that the natural gas pipelines connecting Europe and Russia are not bi-directional and do not have the necessary compressors to allow the inflow of gas from Europe into Russia. *Id.* at 16-17. Commerce then stated that it continued to find that natural gas from Europe would not be available to purchasers in Russia, and thus the European export prices reflected in the IEA data were not viable tier two world market prices. *Id.* at 17. However, Commerce preliminarily found that natural gas exported from Kazahkstan was available to purchasers in Russia during the POR because BNS reported exports of natural gas to Russia under HTS code 2711.21.000 and Kazakh natural gas producer Karachaganak Petroleum Operating BV ("KPO") sold natural gas to Gazprom's Orenburg Gas

4

Plant in Russia in 2021 using the Karachaganak-Orenburg Transportation Pipeline, which terminates in Russia.  *Id.*  Therefore, Commerce preliminarily selected 2021 export prices from the BNS as a tier two benchmark.  *Id*.

11.     On June 12, 2023, Mosaic, JSC Apatit, and Archer Daniels Midland Company ("ADM"), a U.S. importer of subject merchandise, filed case briefs.  *See* IDM at 3.  On July 5, 2023, Mosaic, JSC Apatit, and ADM filed rebuttal briefs.  *See id.*  Mosaic argued in its case brief that Commerce erred in preliminarily selecting a tier two benchmark composed of Kazakh export prices.  *See* Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers From the Russian Federation: Petitioner's Case Brief (June 13, 2023) at 2-11.  Mosaic argued that the Kazakh natural gas data are not a suitable as a tier two benchmark because Russian purchasers do not have access to a world market price for processed Kazakh natural gas comparable to the gas provided by the GOR for LTAR.  *Id*. at 2, 5-8.  Mosaic argued that the customs classification subheading that Commerce cited, 2711.21.000, is used for natural gas that is *not* sold to the population in Russia.  *Id.* at 6.

12.     Mosaic also argued that Gazprom – a Russian governmental entity that controls the Russian gas pipeline system – is the only importer of natural gas from Kazakhstan.  KPO's natural gas exports to Russia via the Karachaganak-Orenburg Transportation Pipeline were of raw (high-sulfur) gas sent to Gazprom's Orenburg facility in Russia for processing pursuant to an arrangement between Gazprom and KazRosGas ("KRG"), and, after Gazprom processes the gas, it is mostly re-exported back to Kazakhstan.  *Id.* at 6-7.  Mosaic noted that the Kazakh gas exported under Gazprom's "special arrangement" with KPO and KRG is not comparable to the gas that JSC Apatit purchases from Gazprom and its affiliates, and there was no evidence that export prices for processed Kazakh gas were "available to" purchasers in Russia during the POR.

Mosaic also argued that the Kazakh natural gas market is distorted by the GOK's involvement in the market, such that all Kazakh gas prices are distorted and unusable as a benchmark. *Id.* at 8-10. Mosaic argued that Commerce should instead rely on the European OECD natural gas prices reported by the IEA to construct a tier three benchmark of natural gas prices in Russia, consistent with its approach in the investigation. *Id.* at 10-11.

13. Commerce issued the *Final Results* on October 31, 2023. *See Final Results*, 88 Fed. Reg. at 76,183. In the *Final Results*, Commerce continued to find that exports of Kazakh-origin natural gas to Russia are "available to" purchasers in Russia, and Commerce found that exports of Kazakh-origin natural gas to non-distorted, non-Russian countries could serve as a tier two benchmark under 19 C.F.R. § 351.511(a)(2)(ii). IDM at 46. To support its determination, Commerce stated: "In prior cases, . . . the GOR has confirmed that imports under this customs code (2711210000) are placed under a customs procedure of a release into free circulation." *Id.* Commerce noted Mosaic's argument that the definition of this customs code includes the phrase "excluding as sold to the population," but asserted that even imports that are not "sold to the population" in Russia could be considered as "available to purchasers" in Russia. *Id.* at 47. Commerce stated that "there is no language in the regulation or discussion in the *CVD Preamble* indicating that 'available' must be interpreted as available to private entities, nor is there text equating 'available' to prices that are available to 'consumers.'" *Id.* Commerce also found that whether the Kazakh domestic market is distorted should have "no bearing" on Commerce's ability to use Kazakh exports as a tier two benchmark. *Id.* at 48.

14. Because Commerce found the BNS natural gas prices were a viable tier two benchmark, Commerce stated that it was not necessary to consider IEA industry natural gas prices as a tier three benchmark. *Id.* at 49.

## STATEMENT OF CLAIMS

### Count One

15. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 14.

16. Commerce selected Kazakh export prices reflected in BNS data as a tier two benchmark for the natural gas for LTAR subsidy program. Commerce's decision to select the BNS data as a tier two benchmark, rather than IEA industry gas prices as a tier three benchmark, is unreasonable, unsupported by substantial evidence, and otherwise not in accordance with law.

### REQUEST FOR JUDGMENT AND RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that the Court:

1) Hold that certain aspects of Commerce's final results in the first administrative review of the countervailing duty order on phosphate fertilizers from the Russian Federation are unreasonable, not supported by substantial evidence, and otherwise not in accordance with law;

2) Remand the final results to Commerce for disposition in accordance with the Court's final opinion; and

3) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jeffrey I. Kessler
David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann
Alexandra Maurer
Kanzanira Thorington*

WILMER CUTLER PICKERING
  HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6612
jeffrey.kessler@wilmerhale.com

7

*Resident in WilmerHale's New York office:*
*7 World Trade Center*
*250 Greenwich Street*
*New York, NY 10007*

Dated: December 28, 2023